UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-347-H

SHANTEL DAVIS, BRENDA HENDERSON, LAMONIQUE
HICKMAN-JOHNSON, ANTOINETTE YOUNG,
and SPENCER RALSTON                                                      PLAINTIFFS

V.

TEAMSTERS LOCAL UNION NO. 783
and KELLOGG'S SNACKS                                                      DEFENDANTS

**MEMORANDUM OPINION**

Plaintiffs[1] bring employment discrimination claims and claims under the Labor Management Relations Act against their current employer, Kellogg's Snacks ("Kellogg's"), and their union, Teamsters Local Union No. 783 ("the Union"). Defendants have both moved for summary judgment on all claims.

The primary difficulty with Plaintiffs' claims is that the evidence entirely suggests that Kellogg's sought to follow its collective bargaining agreement when eliminating two production lines and the commiserate number of employees. This establishes a legitimate business reason for its employment decisions as to these employees. Moreover, subsequent to the alleged discriminatory acts, Kellogg's has recalled two of the Plaintiffs to employment and one Plaintiff has successfully bid back into employment under the terms of that same collective bargaining agreement. After thoroughly reviewing all submissions, the Court will sustain Defendants' motions.

---

[1] Plaintiffs Shantel Davis and Brenda Henderson previously dismissed their claims. The Court refers only to the remaining Plaintiffs throughout this opinion.

I.

Plaintiffs all work in Kellogg's Louisville facility where the primary product manufactured is Girl Scout Cookies. Because of the seasonal nature of production, Kellogg's lays off some employees from March to June or July each year. Employees may volunteer for these seasonal layoffs, and any additional layoffs required are determined by plant-wide seniority based on Article 12.4 of the Collective Bargaining Agreement ("CBA"). All Plaintiffs have been subject to seasonal layoffs during their employment with Kellogg's, and none have ever challenged Kellogg's application of Article 12.4 to selection of employees for seasonal layoff. Recall proceeds by seniority, regardless of whether an individual volunteered for the seasonal layoff.

In 2009, Kellogg's determined that it must cut two of the production lines, thereby eliminating approximately 120 jobs. Article 12.5 of the CBA governs bumping and displacement of employees, but does not mention severance or termination of an employee upon displacement. Therefore, Kellogg's turned to the extended layoff provision, Article 12.4 of the CBA. To apply these Articles to the job elimination process, Kellogg's consulted with the Union before and during implementation of a two phase job elimination process.

Initially, Kellogg's requested each employee complete an Employee Relations Memorandum listing qualifications of bid jobs actually held, with the corresponding years each position was held. Plaintiffs claim the purpose of these forms was never explained to them. Kellogg's and Union stewards cross-referenced those forms with Kellogg's records to confirm qualifications and determine an individual's seniority in relation to other qualified employees. The Union discussed any discrepancies between records with the employee. The Union

2

negotiated with Kellogg's to allow laid off employees to bid on any job openings during layoff according to seniority; these employees would be trained for the jobs on which they successfully bid. Moreover, employees on extended layoff could be recalled for up to three years.

Each Plaintiff was placed on extended layoff in 2009. Shortly afterwards, the Union held a meeting which at least some Plaintiffs attended. Chuck Probus, the Union's business agent spoke with the attendees and determined the underlying concerns were the same. The crux of the laid-off employees' complaints against Kellogg's is that other less senior employees were retained during the layoff, even though Plaintiffs were qualified for remaining positions. Therefore, Probus determined that Plaintiff Young should file her already prepared grievance, with others (including other Plaintiffs) as signatories to that grievance. The grievance procedure was fully exhausted, Kellogg's denied the grievance first. Then the Joint Area Committee did the same.

Plaintiffs contend that the Union failed to adequately represent them in part because their concerns were not individually grieved. In fact, they claim that they were told by Union business agent Chuck Probus that Kellogg's would only accept one grievance. Plaintiffs also claim that they were discriminated against based on race, sex, and/or disability. Before the layoffs in 2009, Kellogg's employees at the Louisville facility were 63% female and 37% male, and 55% identified as African American while 44% identified as Caucasian. After the 2009 layoffs, 64% of the remaining employees were female, 48% were African American and 51% Caucasian. Kellogg's reports that "[t]he majority of the most senior (earliest hired) employees are Caucasian." Def. Kellogg's Mot. Summ. J. 9. The Court will briefly address each Plaintiff's claims and circumstances.

II.

Only three Plaintiffs remain, Antoinette Young, LaMonique Hickman-Johnson, and Spencer Ralston. Young is an African American woman who began her work as a packer with Kellogg's in 1998. She had filled in for other positions, such as CECO and wrapper jobs, and claims she should have been retained in one of these positions during the layoff. She had never bid on nor trained for any other position besides packer. Her grievance, joined by others, was filed and pursued through exhaustion of her remedies. Along with the Union's Probus, she represented herself at a grievance meeting, at an Executive Board meeting, and before the Joint Area Committee. Young filed claims with the EEOC and the National Labor Relations Board ("NLRB**")** claiming sex and age discrimination and breach of the duty of fair representation. She now claims she was the victim of racial and gender discrimination. Young did not bid on any jobs during the layoff. In June 2010, Kellogg's recalled Young to employment pursuant to the seniority and qualification provisions of the CBA.

Hickman-Johnson is an African American woman who began work at Kellogg's in 1997. In 2009, she was working as a packer. In 2003, she bid on a position as a wire cutter and worked as such for several weeks. However, she chose not to continue the training and trial period and returned to her position as packer, which she has held ever since. She did not list this position on her Employee Relations Memoranda. Hickman-Johnson has filled in for other positions, but has never bid on nor received the training on these other positions. She was a party to Young's grievance, but feels she should have been allowed an independent grievance because of her experience as a wire cutter. At one point, Hickman-Johnson wrote her own grievance, but was told she was too late to file her own grievance. She did file an EEOC charge against Kellogg's,

but not against the Union, based on sex, not race. She now claims she was the victim of racial and gender discrimination by both the Union and Kellogg's. Specifically, Hickman-Johnson feels she should have been retained as a wire cutter and those kept in that position were predominantly male. In June 2010, Kellogg's recalled Hickman-Johnson to employment pursuant to the seniority and qualification provisions of the CBA.

Ralston is an African American male who began work at Kellogg's in 1995. He worked as a forklift operator in the shipping department. He claims that he should have been retained to work in certain jobs in the Packing Utility Department. Ralston has temporarily filled or worked several positions since he was hired.[2] Since he last worked in any of these positions, the job duties have changed and Kellogg's has instituted required training. Furthermore, Kellogg's now requires Packing Utility Department employees to be qualified on all Packing Utility Department jobs.

Ralston also says that, in August of 2010, he bid on a job during the layoff which he should have, but did not receive. Ralston claims that he had worked that position and should have been recalled to that position, but he was not working that position when the layoff occurred. The job was awarded to an African American male with more seniority than Ralston, but who had not been trained for the position.

Generally, Ralston feels that he should have been allowed to file his own grievance because his circumstances are unique. He did file an EEOC charge of age discrimination against Kellogg's and the Union.[3] Ralston subsequently filed a charge alleging disability discrimination

---

[2] Ralston has filled in on other positions outside the Packing Utility Department, but he has never been trained for any of these positions.

[3] Plaintiffs only make claims of race, gender, and disability discrimination in this lawsuit.

related to the August 2010 bid. Ralston had polio as a child and has a current diagnosis of diabetes. Ralston claims that he informed Kellogg's that he would have approximately one absence every two to three months presumably as a result of his diabetes. He also missed work in 2008 because of surgery on his foot. In January 2011, Ralston bid on a position at Kellogg's and was employed pursuant to the seniority provisions of the CBA.

III.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "On summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962) (per curiam). While the moving party must demonstrate that no genuine issue of material fact exists, in response, the non-moving party must move beyond the pleadings and present evidence in support of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

IV.

Plaintiffs claim that Kellogg's breached the CBA when laying off, not recalling, or not awarding bid jobs to Plaintiffs during the extended layoff as well as instructing the Union not to accept more than one grievance. Plaintiffs also claim that the Union breached its duty of fair representation. When plaintiffs bring both of these claims, it is known as a hybrid §301/duty of fair representation claim; neither Defendant is liable unless both claims succeed. *White v. Detroit Edison Co.,* 472 F.3d 420, 424-425 (6th Cir. 2006) (citing *Roeder v. Am. Postal Workers*

6

*Union*, 180 F.3d 733, 737 (6th Cir. 1999) (citation omitted)). In this case, Plaintiffs' claims against the Union fail, so the claims against Kellogg's must also necessarily fail.[4]

"A union breaches this duty [of fair representation] when its conduct toward an employee is 'arbitrary, discriminatory, or in bad faith.'" *Courie v. Alcoa Wheel & Forged Products,* 577 F.3d 625, 631 (6th Cir. 2009) (quoting *Air Line Pilots v. O'Neill,* 499 U.S. 65, 67 (1991)). "A union's action is 'arbitrary' 'only if [such conduct] can be fairly characterized as so far outside a 'wide range of reasonableness' that it is wholly 'irrational' or 'arbitrary.'" *Id.* (internal citations omitted). A court should consider whether a union "'arbitrarily ignore[d]' or handled in a 'perfunctory fashion'" a particular grievance. *White,* 472 F.3d at 427 (quoting *Vaca v. Sipes,* 386 U.S. 171, 191 (1967)).

Here, the Union negotiated with Kellogg's to reduce the number of positions eliminated during the layoff and to allow those employees subject to the extended layoff to bid on positions for which they had not previously been trained. The Union stewards also reviewed the Employee Relations Memorandum and investigated any discrepancies with Kellogg's records.

Plaintiffs claim Probus did not speak to all of the laid off employees who attended the Union meeting shortly after lay offs were announced; in fact, with the exception of Young, they claim that no one from the Union or Kellogg's discussed their individual circumstances with them. Probus concluded from that Union meeting, however, that the underlying issue of complaining employees was the same. In fact, all Plaintiffs do argue that they were qualified for positions held by less senior employees after the extended layoff. At the Union meeting, the laid

---

[4]Kellogg's also argues that Plaintiff Ralston's §301 hybrid claim is time barred and his disability claim should be dismissed for failure to exhaust administrative remedies. The Court need not address these arguments since the claims clearly fail for reasons in common with claims of the other Plaintiffs.

off employees, including Plaintiffs, signed one grievance because Probus believed that this approach would allow for a uniform decision as to how employees prove which jobs they can perform.[5] No one objected at that time. An added benefit was that those employees who had not timely filed their own grievance, such as Ralston, would still be able to have the underlying concern addressed.

Kellogg's denied the joint grievance. Then, the Joint Area Committee, the final step in the grievance process, did so as well. Probus, at times in conjunction with Young, presented the grievance.[6] In preparation for these presentations, Probus testified that he reviewed "the Contract, gather[ed] documents from the Company, investigate[d] past practice, and communicate[d] with the stewards," as well as discussed the grievance with Young. Def. Union's Mot. Summ. J. 5.

The Court cannot conclude that the Union's actions were arbitrary or in bad faith. It had plenty of sound reasons for its actions. Plaintiffs also claim the Union acted in a discriminatory manner based on gender, race or disability. The Court will address the allegations of discrimination below, but finds there is insufficient evidence to support any claim of discriminatory Union conduct.

Because Plaintiffs claims against the Union fail, their breach of contract claims against Kellogg's cannot survive.

V.

---

[5] Plaintiffs claim that some employees, including Plaintiff Hickman-Johnson, filed grievances prior to the September 11, 2009 Union meeting, but Probus refused to accept these grievances. Plaintiff Ralston also filed a separate grievance with another employee; he states he never learned the outcome of his grievances.

[6] Plaintiff Hickman-Johnson feels she should have been allowed to accompany Plaintiff Young to the meeting with Kellogg's.

8

Plaintiffs bring claims of discrimination based on race, sex, and disability. It is unclear whether Plaintiffs are making their discrimination claims based on disparate impact or disparate treatment. Regardless, the claims follow the same general burden shifting framework. A plaintiff must prove a prima facie case of disparate treatment by showing that he or she belongs to a protected class, was qualified for the position, was subject to an adverse employment decision, and similarly situated employees who are not members of the protected class were treated "more favorably."[7] *Younis v. Pinnacle Airlines, Inc.,* 610 F.3d 359, 363 (6th Cir. 2010). Plaintiffs show a prima facie case of disparate impact by "(1) identify[ing] the 'particular employment practice'; (2) show[ing] a disparate impact on a protected group, and (3) prov[ing] the employment practice caused the disparity." *Shollenbarger v. Planes Moving & Storage*, 297 F. App'x 483, 485 (6th Cir. 2008) (citing 42 U.S.C. § 2000e2(k)(1)(A)(i)).

Plaintiffs make the following allegations with regards to racial discrimination: more Caucasian employees are employed on the first shift than other shifts; African American employees who bid on first shift positions get bumped back to second or third shift; Caucasian employees were allowed to take their names off the 2009 seasonal volunteer list when they learned the layoff could be longer than the usual seasonal layoff; the Union worked harder to ensure employees could take their names off the 2009 seasonal layoff list than to support Plaintiffs' grievance; only African American employees appeared at the Union meeting following layoffs; and the grievances of Caucasian employees were processed more quickly and better represented than those of African American employees.

---

[7]Plaintiffs actually bring their claims under the Kentucky Civil Rights Act. Claims under the Kentucky Civil Rights Act are analyzed similarly to claims under the ADA and Title VII. *Howard Baer, Inc. v. Schave,* 127 S.W.3d 589, 592 (Ky. 2003) and *McDonald's Corp. v. Ogborn*, 309 S.W.3d 274, 287 (Ky. Ct. App. 2009).

If a plaintiff presents evidence of a prima facie case, the burden shifts to the defendant to provide a legitimate business reason for the adverse employment action or the challenged practice. *Spees v. James Marine, Inc.,* 617 F.3d 380, 389 (6th Cir. 2010) and *Shollenbarger*, 297 F. App'x at 485-86. The burden then shifts back to the plaintiff to demonstrate that the proffered reason is pretext or that there are other business practices "without a similarly undesirable. . . effect" which would serve Defendant's purposes. *Id.* (citations omitted). At the heart of the dispute, Plaintiffs believe that they were qualified for certain positions not eliminated during the extended layoff and more senior than those retained in the disputed positions. Defendants believe that Plaintiffs were not qualified for those positions because they had not completed the required training and trial periods.

The Court questions whether Plaintiffs have established a prima facie case of discrimination based on race, gender or disability. With regards to the disparate treatment claim, the Court questions whether Plaintiffs have presented any evidence of similarly situated employees who are not members of the protected class who were treated differently.

With regards to disparate impact, Plaintiffs have arguably satisfied the elements of a prima facie case, at least for race discrimination. Kellogg's recognizes that there are more Caucasian employees as opposed to African American employees who were not subject to extended layoff. Originally, there was a higher percentage of Caucasian employees among those with the most senior status and the law does not require disregard of a bona fide seniority system. 42 U.S.C. §2000e-2(h) and KRS 344.110(2)(e). Because the Court can resolve these claims on other grounds, the Court need not determine whether each Plaintiff can actually make out a *prima facie* case.

VI.

Kellogg's argues that it had legitimate business reasons for each of its employment decisions at issue; mainly, they were dictated by the CBA. This argument and the evidence of it are the central focus of this case.

Kellogg's negotiated with the Union to implement an extended layoff according to Articles 12.4 and 12.5 of the CBA. Defendants' legitimate business reason is that it followed the CBA.

The relevant part of Article 12.4 of the CBA states as follows:

"An extended Lay off is defined as reduction in force, which lasts longer than a temporary layoff. A reduction in force or extended layoff shall be by plant-wide seniority provided the senior employees retained have proven skill, ability and physical fitness to perform the work assigned. Recall from extended layoff shall be by plant-wide seniority provided the employee recalled has the proven skill, ability, and physical fitness to perform the work which is available."

The relevant part of Article 12.5 states:

"When a job is eliminated, the senior employee affected by the job elimination may 'bump' the least senior employee in their job, by shift, and if there is no junior employee in the same job, they may displace the least senior employee in their wage classification by shift; and the employee displaced by the 'bump' may 'bump' the least senior employee in their department by shift, provided they are qualified to perform the job. Should such employee not be qualified to perform such job, they may 'bump' the least senior employee in the general labor classification provided they are qualified to perform that job."

Kellogg's equated the "qualified" requirement of Article 12.5 of the CBA with the "proven skills, ability, and physical fitness" requirement of Article 12.4 of the CBA. Generally, Kellogg's considered employees who had completed training and a trial period for a particular position to be qualified. Furthermore, Kellogg's, with the Union, determined that those employees on extended layoff would be recalled based on seniority and qualifications or could

11

bid for open positions based on plant-wide seniority.

Plaintiffs do not argue that Defendants failed to follow the procedures for extended layoff, recall, or bidding, but instead suggest that they were "qualified" for positions they had temporarily filled or worked more than five years ago, but not completed training and the trial period.[8] In other words, Plaintiffs suggest Kellogg's misinterpreted the terms of the CBA. In the context of a burden shifting analysis, the Court understands this argument to imply that Defendants' interpretation of the CBA was mere pretext for discriminatory reasons for the adverse employment actions.

Defendants need not have the correct interpretation of the CBA, but must have an honest belief its employment decisions are a result of application of the non-discriminatory CBA. *Majewski v. Automatic Data Processing, Inc.,* 274 F.3d 1106, 1117 (6th Cir. 2001) (stating that "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect."). Kellogg's and the Union conferred with each other about how to implement the extended layoff under the CBA. Kellogg's had implemented Article 12.4 of the CBA in same manner each year during the seasonal layoffs. In 2007, the CBA was negotiated in the context of the past practice of applying Article 12.4's "proven skill, ability and physical fitness" requirement to mean "qualified" or fully trained with completed trial period, and no suggestion was made to change the understanding, application, or terms of this Article. Sutton Aff. ¶¶ 4, 7-9. All evidence suggests Kellogg's believed it was correctly applying the CBA to an unprecedented layoff.

---

[8]Plaintiffs do argue that Kellogg's failed to move employees between departments based on seniority, but did not develop this argument within the confines of the CBA. The Court will not further address this argument.

Plaintiffs could show pretext with evidence that (1) Defendants' reasons had no basis in fact, (2) "that the proffered reasons did not actually motivate his discharge," or (3) the reasons presented were "insufficient to motivate discharge." *Allen v. Highlands Hospital Corp.*, 545 F.3d 387, 396 (6th Cir. 2008) (quoting *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1083-84 (6th Cir. 1994)) and *Carson v. Ford Motor Co.*, 413 F.App'x 820, 822 (6th Cir. 2011) (quoting *Ladd v. Grand Trunk W.R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009)). Plaintiffs have presented nothing, however, to suggest that Defendants' interpretation of the CBA was not reasonable or based in fact, or that their employment decisions were not the result of carrying out its interpretation of the CBA. Indeed, Plaintiffs subsequently benefitted from the CBA seniority and qualification provisions when each was either recalled to employment or was awarded a bid position.

Plaintiffs' suggestion could be considered an alternate practice though. The suggested alternate practice would not ensure Kellogg's had sufficiently trained staff to perform the required work. "The purpose of this step is not to second guess the employer's business decisions, it is to show - by pointing to obviously ignored alternatives - that the 'particular employment practice' was actually pretext for discrimination." *Shollenbarger*, 297 F. App'x at 487. No evidence suggests that Kellogg's could adopt such an alternative practice without violating the rights of other employees under the CBA. Therefore, the alternative is not legally viable. No such conclusion can be drawn.

cc: Counsel of Record